```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
GOLDEN GOOSE DELUXE BRAND d/b/a           :
GOLDEN GOOSE SPA,                         :
                                          :
                        Plaintiff,        :
                                          :
        -against-                         :
                                          :
                                          :
AIERBUSHE et al.,                         :
                                          :
                                          :
                        Defendants.       :
------------------------------------------------------------- X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/16/2019
```

19-CV-2518 (VEC)

~~SEALED~~
MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

On March 21, 2019, Plaintiff Golden Goose Deluxe Brand d/b/a Golden Goose SPA ("Golden Goose") commenced this lawsuit under seal against 78 Defendants seeking, *inter alia*, a temporary restraining order ("TRO"); an order to show cause why a preliminary injunction should not be issued; an asset restraining order; an order authorizing alternative service; and an order authorizing expedited discovery. Plaintiff brings causes of action for trademark counterfeiting, infringement, false designation of origin, and related claims, pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and state law. *See* Compl. Upon receipt of the Complaint, the Court ordered Plaintiff to show cause why all Defendants except one should not be dropped for misjoinder, pursuant to Federal Rules of Civil Procedure 20 and 21.

For the following reasons, the Court will not drop any Defendants at this time. Although the Court does not believe that joinder complies with Rule 20, considerations of judicial economy counsel against severance at this juncture. This ruling, however, is without prejudice to any Defendant moving for severance at a later date. By separate orders today, the Court will

enter a TRO and grant Plaintiff's other applications. This opinion will remain under seal until the Court orders otherwise.

**I.    Background[1]**

Plaintiff is a manufacturer of high-end shoes and other fashion accessories. *See* Compl. ¶¶ 7–10. Plaintiff distributes its products using several registered trademarks. *See id.* Defendants are users on Wish.com, an online marketplace and e-commerce platform, that have allegedly sold or offered for sale counterfeit versions of Plaintiff's products. *See id.* ¶¶ 19–20, 24, 27–29. Plaintiff alleges that Defendants' products are "nearly indistinguishable" from Plaintiff's products, except that Defendant's products are sold for between $25 and $90, whereas Plaintiff's products retail for $500 or more. *See id.* ¶¶ 32–34. Plaintiff alleges that its investigator purchased shoes from several of the Defendants and confirmed that the products are counterfeits. *See* Chung Aff. ¶ 23. Plaintiff has sued some Defendants in their corporate names, but most are sued under their Wish.com usernames.

**II.   The Applicable Law**

Rule 20(a) allows persons to be joined as defendants in a single action if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "As is clear from the plain language of Rule 20(a)(2), both criteria must be met for joinder to be proper." *Deskovic*, 673 F. Supp. 2d at 159 (collecting cases). As to the first requirement, transactional relatedness, "the court must assess the logical relationship between the

---

[1] The court accepts all factual allegations in the Complaint as true for purposes of this opinion. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009).

2

claims and determine whether the 'essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Id.* at 166; *see also United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979). As to the second requirement, commonality, the overlap in questions of law or fact must be "substantial" in order for joinder to be appropriate. *In re Blech Secs. Litig.*, No. 94-CV-7696, 2003 WL 1610775, at *13 (S.D.N.Y. Mar. 26, 2003); *see also Tardd v. Brookhaven Nat'l Lab.*, No. 04-CV-3262, 2007 WL 1423642, at *11 (E.D.N.Y. May 8, 2007).

If parties are not properly joined under Rule 20, a court may, "on just terms . . . drop a party," pursuant to Rule 21. Fed. R. Civ. P. 21; *see also Tardd*, 2007 WL 1423642, at *9. The decision whether to drop a party is left to the discretion of the trial court. *See Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988)).

## III. Discussion

### A. Plaintiff's Claims Do Not Satisfy the Requirements of Rule 20

As to the second requirement of Rule 20, that the case present a "question of law or fact common to all defendants," Plaintiff's claims meet the mark. Fed. R. Civ. P. 20(a)(2)(B). Plaintiff brings identical causes of action against each Defendant and, if litigated, Plaintiff's claims will involve the same evidence of Plaintiff's trademarks, goodwill, and alleged consumer confusion.

Plaintiff has not, however, satisfied the first requirement of Rule 20, transactional relatedness. Plaintiff argues that the requirement is satisfied because Defendants are "selling the same Counterfeit Products violating the same intellectual property rights . . . on the same e-commerce platform." Pl.'s Supp. Mem. of Law at 3. Plaintiff notes that when a consumer

3

searches Wish.com for its products, "he or she is provided with a single webpage" showing the counterfeit items that Defendants have offered for sale. *Id.* But the mere fact that multiple parties have allegedly infringed the same trademark does not mean that those parties are transactionally related for purposes of Rule 20. *See In re EMC Corp.*, 677 F.3d 1351, 1357 & n.2 (Fed. Cir. 2012) ("[T]he mere fact that infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise common questions of claim construction and patent invalidity." (collecting cases)); *Williamson v. Verizon Commc'ns Inc.*, No. 11-CV-4948, 2013 WL 323992, at *1 (S.D.N.Y. Jan. 18, 2013) ("[T]he fact that two parties may manufacture or sell similar products, and these sales or production may have infringed the identical patent owned by the plaintiffs is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." (quoting *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003), and collecting other cases)). Applying that principle, the fact that Defendants are infringing the same trademarks is insufficient, standing alone, to show transactional relatedness. The fact that Defendants are doing so on the same e-commerce platform adds little to this analysis, given that Wish.com has over 100 million distinct user accounts and has generated billions in sales worldwide. *See* Chung Decl. ¶ 7. Finally, the fact that Defendants' products all appear on a single webpage when a consumer searches for Plaintiff's products says nothing about whether the claims are logically related; because Defendants are allegedly all infringing the same products, it is unsurprising that a text search for Golden Goose products would yield results that include Defendants' user accounts.

Plaintiff also argues that Defendants' accounts "share unique identifiers, such as design elements[,] . . . similarities in pricing, description[s] of the goods offered," listing titles, and product images, suggesting that Defendants "share common ownership" and are "engage[d] in

4

coordinated operations." Pl.'s Supp. Mem. of Law at 3–4. This argument, however, does not have a solid factual basis. Plaintiff asserts that 34 out of the 78 Defendants in this action "share the same listing title and image" in their listings. *Id.* at 3. This assertion overstates the facts, as these 34 Defendants have slightly different listing descriptions. *See* Scully Decl. Ex. B. But even if the descriptions were identical, this evidence falls far short of establishing with any certainty that these parties are acting in concert or that their actions are otherwise logically related.[2] Furthermore, Plaintiff offers no evidence suggesting that the remaining 44 Defendants share common ownership or coordinate operations, other than the vague possibility that discovery may reveal further linkages among these parties. *See* Pl.'s Supp. Mem. of Law at 4. Absent a stronger factual basis, the Court will not simply accept this promise on faith.

In short, Plaintiff has failed to establish that its claims against the 78 different Defendants are transactionally related. The requirements of Rule 20(a)(2), therefore, are not satisfied here.

### B. Considerations of Judicial Economy Counsel Against Severance at This Juncture

Even when the requirements of Rule 20 are not met, Rule 21 affords a district court "broad discretion" in fashioning an appropriate remedy, including the possibility of dropping a party. *Deskovic*, 673 F. Supp. 2d at 159–60; *see also, e.g.*, *Aguoji v. Am. Sec. Ins. Co.*, No. 13-CV-5964, 2014 WL 116445, at *2 (E.D.N.Y. Jan. 10, 2014); *Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013). In considering whether to drop a party, courts in this district consider "(1) whether severance would serve judicial economy; (2) whether prejudice to the

---

[2] This opinion is not meant to imply that a plaintiff *must* show that defendants share common ownership or are acting in concert in order for them to be properly joined. The fact that defendants may be "independent actors," rather than joint tortfeasors, does not preclude joinder. *In re EMC Corp.*, 677 F.3d at 1356. Nevertheless, joint action may be a relevant consideration in determining whether the transactional-relatedness requirement is satisfied. *See id.* at 1359–60 (listing numerous "pertinent factual considerations" relating to this requirement).

5

parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr*, 596 F. Supp. 2d at 826; *see also, e.g.*, *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011); *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003). "Courts have cautioned, however, that severance is a procedural device to be employed only in exceptional circumstances." *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (quoting *Deskovic*, 673 F. Supp. 2d at 160).

Dropping Defendants—at least, at this time—would not serve judicial economy. According to Plaintiff, Defendants are likely to purge their assets and hide their inventories of counterfeit products if they become aware of this lawsuit prior to the time that their assets are frozen through a court order. *See* Pl.'s Supp. Mem. of Law at 5; Chung Decl. ¶¶ 28–29. Accordingly, this Court has allowed Plaintiff to file this action under seal until an asset-freeze order is entered and executed. If Plaintiff is correct, it is important that *all* Defendants' assets be frozen simultaneously, prior to the time that the action is unsealed, to avoid giving any Defendant notice of the lawsuit and, therefore, an opportunity to purge its assets; freezing only *some* Defendants' assets, in other words, would risk tipping off the other Defendants and giving them a chance to abscond with their assets. If this Court dropped any Defendants from this lawsuit, Plaintiff could refile its claims against those Defendants in separate actions under seal— but there is no guarantee that those actions would all end up in front of the same district court judge. This procedure, therefore, would require multiple judges to coordinate the entry of simultaneous asset freezes across different cases. Although this procedure would comply more

faithfully with the letter of Rule 20, it would involve numerous logistical hurdles and, ultimately, be a waste of judicial resources.[3]

The Court also does not anticipate that Defendants will suffer any prejudice from joinder. In the Court's experience, nearly all Defendants in similar trademark-infringement cases either default or settle. *See, e.g.*, *WowWee Grp. Ltd., et al v. A249345157, et al.*, No. 1:17-CV-09358-VEC (S.D.N.Y.); *Moose Toys Pty. Ltd. et al. v. 963 et al.*, No. 1:18-CV-02187-VEC (S.D.N.Y.). This will likely not be a case, therefore, in which Defendants might raise conflicting defenses and would thereby be prejudiced by joinder; on the contrary, it is unlikely that any Defendants will litigate this case at all. *See WowWee Grp. Ltd. v. Meirly*, No. 18-CV-706, 2019 WL 1375470, at *6 (S.D.N.Y. Mar. 27, 2019) ("Defendants have failed to appear and raise any issue regarding joinder. As a consequence, there are no defenses raised in this action, let alone conflicting ones, that would require separate factual and legal analysis."); *In re Blech Sec. Litig.*, 2003 WL 1610775, at *14; *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1401 (S.D.N.Y. 1995). This factor, therefore, does not weigh in favor of severance.

In short, although joinder is not proper under Rule 20, severance at this time would be premature. The Court's analysis may change as this case progresses, however. Once an asset freeze is entered, the Court's concerns about judicial economy will diminish, as severance would not require the same logistics as it would at this juncture. Further, if multiple Defendants appear and litigate this case, those Defendants could have a compelling argument that joinder causes

---

[3] Alternatively, Plaintiff could file its claims against Defendants, under seal, in multiple actions and ask that all such actions be deemed "related" and assigned to the same district court judge. *See* Rules for the Division of Business Among District Judges (S.D.N.Y.), Rule 13. That would require sorting out whether the cases are properly "related" under this District's rules. If the cases were deemed "related," all Defendants would be assigned to the same judge in separate dockets, rather than—as here—in the same docket. That result would make little practical difference from the present situation, yet would require a great deal of judicial wrangling to get there.

them prejudice, due to the possibility of conflicting defenses. Accordingly, if any Defendant appears in this case, the Court will allow that Defendant to move for severance at that time.

## CONCLUSION

For all the foregoing reasons, the Court will not drop any Defendants from this case at this time. This ruling, however, is without prejudice to any Defendant moving for severance at a later date. By separate orders today, the Court will enter a TRO and grant Plaintiff's other applications. This opinion will remain under seal until the Court orders otherwise.

**SO ORDERED.**

**Date: May 3, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**